Filed 10/13/22  In re P.M. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re P.M., a Person Coming Under the Juvenile Court Law. | |
| | D080437 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ13275B) |
| v. | |
| R.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis, Judge.  Conditionally reversed and remanded with directions.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, County Counsel and Caitlin E. Rae, Chief Deputy County Counsel, for Plaintiff and Respondent.

# I.

## INTRODUCTION

R.M. (Father) appeals from the juvenile court's order terminating his parental rights to his daughter, P.M. Father's sole claim on appeal is that the juvenile court erred by finding that the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) did not apply before the San Diego County Health and Human Services Agency (Agency) completed its initial inquiry under ICWA and Welfare and Institutions Code section 224.2.[1] The Agency concedes error but argues the error was harmless. We do not agree. Applying the prejudicial error approach adopted in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), we conclude the error was prejudicial. Therefore, we reverse the court's ICWA finding and remand for the limited purpose of ICWA compliance.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In October 2019, the Agency initiated this dependency proceeding on P.M.'s behalf under section 300 subdivision (b)(1). The Agency alleged there was a substantial risk P.M. had suffered or would suffer serious physical harm or illness. Specifically, the Agency alleged that Mother and Father had extensive drug abuse histories, newborn P.M. and Mother had tested positive for narcotics including methamphetamine, and Father had refused drug

---

[1]    All further section references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Because Father's only contention on appeal concerns ICWA, we limit our factual background accordingly. C.W. (Mother) is not a party to this appeal, and we discuss her only as needed.

testing, despite his two narcotics-related arrests and assignment to a drug diversion program.

The Agency's October 2019 detention report stated that during interviews with Mother and Father, they both denied having any Native American ancestry. The social worker's notes attached to the report identified numerous paternal and maternal relatives that Mother and Father disclosed during their interviews. For example, Mother identified her parents (maternal grandparents) by name and said that she had always had a "tumultuous relationship" with her mother (maternal grandmother). Mother stated that her grandparents (maternal great-grandparents) primarily raised her after she was kicked out of her parents' home as a teenager. Mother also identified two brothers (maternal uncles) by name and age, and said that she had visited one of her brothers just three days before giving birth to P.M. Father identified five siblings by name and age (three paternal uncles and two paternal aunts), and said that two paternal uncles were incarcerated. There is no indication in the record that the Agency ever asked any of these family members about P.M.'s possible Native American ancestry.

The same month, Mother and Father told the Agency that they wanted paternal aunts to be included in the child and family team meeting and wanted one paternal aunt (M.R.) to be assessed for possible placement. Mother and Father also requested that the Agency assess paternal grandparents for helping with the supervision of their visits with P.M. P.M.'s other paternal aunt (M.G.) reported that Mother and Father had been living with paternal grandparents "for a while." Although Mother reported that she and Father were living with paternal grandparents, she also reported that she and Father lived in hotels. There is no indication that the

3

Agency ever asked paternal aunts and paternal grandparents about P.M.'s possible Native American ancestry.

Also in October 2019, Mother and Father submitted[3] Parental Notification of Indian Status ICWA-020 forms in which they both stated under penalty of perjury that they did not have any Native American ancestry. Father also completed a separate Parentage Inquiry form making the same statement.

Mother and Father were the only family members present at the initial October 9, 2019 dependency hearing. There, the juvenile court found without prejudice that ICWA did not apply.

Mother, Father, paternal grandparents, and a paternal aunt appeared at the October 30, 2019 jurisdiction/disposition hearing. The corresponding minute order does not indicate that the court made any inquiries or rulings about ICWA.

The Agency's August 2020 status report stated that Mother and Father had lived with paternal grandparents at some point and moved to Riverside County in May 2020. As of the Agency's December 2020 status review report, however, Mother and Father had reportedly moved to Mexico so that Mother could give birth to another child and avoid the Agency's intervention.

The Agency's June 2021 section 366.26 report indicated that Father had been arrested in February 2021 and was currently incarcerated. The report also indicated that Mother had been living in Mexico since at least December 2020 and was afraid to cross the border into the United States because of an active warrant for her arrest. The report also stated that a paternal great-aunt had come forward and requested permanent placement

---

3    The record indicates that only Mother's ICWA-020 form was filed with the juvenile court.

of P.M. The record on appeal does not indicate that the Agency ever asked paternal great-aunt about P.M.'s potential Native American ancestry.

In its September 2021 declaration of due diligence, the Agency stated that it had maternal grandparents' names but did not know their addresses, and that it had paternal grandparents' names and addresses. The Agency did not indicate that it had asked paternal grandparents about P.M.'s potential Native American ancestry. Nor did the Agency indicate that it had ever asked Mother for maternal grandparents' contact information.

In October 2021, the Agency spoke by telephone with Mother, who said she agreed to P.M. being placed with paternal great-aunt. The Agency received a letter from Father (who was incarcerated) indicating his agreement to this placement, as well.

As of the Agency's March 2022 addendum report, P.M. had been placed with paternal great-aunt since December 2021. The Agency stated that paternal great-aunt lived with her sister (a second paternal great-aunt) and the second great-aunt's adult daughter (paternal cousin once removed). The Agency also reported that Father was still incarcerated.

At the contested May 17, 2022 section 366.26 hearing, the court terminated parental rights and again found that ICWA did not apply. While still incarcerated, Father appealed from that order, challenging only the court's ICWA finding.

## III.

## DISCUSSION

Father contends that the juvenile court erroneously found ICWA inapplicable before the Agency completed its initial inquiry. We conclude that the ICWA finding must be reversed and that the case must be remanded for ICWA compliance.

5

A.    *Applicable Law*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).)  Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child."  (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id.*, subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' "  (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.)

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has

6

reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA].)

A juvenile court finding that ICWA is inapplicable generally implies that the Agency has fulfilled its inquiry duty. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

B.     *Inquiry Error*

Father contends that the Agency violated section 224.2 by failing to ask any identified maternal or paternal relatives about P.M.'s possible Native American ancestry, including two paternal aunts, paternal grandparents, three paternal uncles, two paternal great-aunts, a paternal cousin once removed,[4] maternal grandparents, and two maternal uncles. The Agency concedes error and that it did not conduct ICWA inquiries with any maternal or paternal extended family members. The Agency's concession is proper, and we accept it.

Aside from paternal great-aunts and paternal cousin once removed, each of these relatives is an "extended family member" under ICWA and should have been asked about P.M.'s possible Native American ancestry. (25

---

4      Father refers to this relative as a "paternal cousin," but because she is the daughter of P.M.'s paternal great-aunt, she is P.M.'s paternal cousin once removed.

7

U.S.C. § 1903(2); § 224.1, subd. (c).)  Further, although paternal great-aunts and paternal cousin do not qualify as "extended family members," P.M. was placed in their home.  Thus, they also should have been asked about P.M.'s possible Native American ancestry.  (Welf. & Inst. Code, § 224.2, subd. (b); *D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.)  Accordingly, we conclude that the juvenile court erred by failing to ensure these inquiries took place before making a final determination that ICWA did not apply.  (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c); *D.S.*, at pp. 1048–1049.)

C.      *Prejudicial Error*

The parties dispute whether this error was harmless or prejudicial. The Courts of Appeal have applied different analytical frameworks to determine whether an ICWA inquiry error was prejudicial.  We need not address these varying approaches, however, because this division has adopted the approach articulated in *Benjamin M.*, *supra*, 70 Cal.App.5th 735. (*In re Y.M.* (2022) 82 Cal.App.5th 901, 910 (*Y.M.*).)

In *Benjamin M.*, the agency could not locate the minor's father and did not obtain any information about Native American ancestry from the minor's paternal side.  Although the agency had access to the father's brother and sister-in-law, it failed to ask them about potential Native American ancestry. In concluding that this error was prejudicial, the appellate court reasoned that the missing information was "readily obtainable" and "likely to bear meaningfully upon whether the child is an Indian child."  (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Here, the record indicates that the Agency was in contact with paternal grandparents, paternal aunts, and paternal great-aunts.  As for paternal uncles, paternal cousin once removed, maternal grandparents, and maternal uncles, there is no indication that the Agency ever asked for these relatives'

contact information or tried to contact them. Thus, we conclude that any ICWA information these relatives could have provided was "readily obtainable" under *Benjamin M.* (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

We further conclude that information from these relatives was likely to "bear meaningfully" on P.M.'s status under ICWA and thus, that the error was prejudicial. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Not only did the Agency fail to ask even one paternal relative about P.M.'s possible Native American ancestry, but it also failed to ask—or even seek contact information for—any maternal relatives identified by Mother. On this record, there are no unique circumstances from which we can presume that *none* of these 14 relatives would have information likely to bear meaningfully on P.M.'s possible Native American ancestry. (*Cf. Y.M.*, *supra*, 82 Cal.App.5th at pp. 917–918 [failure to conduct ICWA inquiries with paternal grandparents was harmless where father lived with and had good relationship with paternal grandmother and where paternal grandfather sought placement with child]; *In re. S.S.* (2022) 75 Cal.App.5th 575 (*S.S.*) [failure to inquire of maternal grandmother harmless where mother and maternal grandmother sought to have child placed with maternal grandmother and thus had incentive to report any Native American ancestry].) Therefore, we must conditionally reverse and remand for the limited purpose of ICWA compliance.

We reject the Agency's contention that the facts here are like those in *Y.M.*, where we concluded the agency's failure to inquire of the child's paternal grandparents was harmless error. (*Y.M.*, *supra*, 82 Cal.App.5th at p. 918.) They are not. In *Y.M.*, the father complained that the agency failed to conduct ICWA inquiries only with paternal grandparents—not 14 relatives

9

on both the child's paternal and maternal sides, as is the case here. Moreover, we reasoned in *Y.M.* that the father "lived with the paternal grandmother during the dependency proceedings and therefore presumably could have asked her at any time whether she knew of any possible Indian ancestry." (*Id.* at p. 917.) We further considered the paternal grandmother's testimony at a dependency hearing that she and the father "had a good relationship" and that "everything was going well in the home they shared." (*Ibid.*) Based on the father's and grandmother's "close and regular proximity," we presumed that the father "had a motive to ask[ ] and could have easily asked" her about possible Native American ancestry that may have given him greater rights under ICWA. (*Ibid.*)

We cannot make such presumptions on this record. First, the length of time that Mother and Father lived with paternal grandparents during the dependency proceeding here is unclear and inconsequential considering their repeated address changes, Father's ongoing incarceration during the last years of the dependency proceeding, and Mother's move to Mexico in December 2020. This record also lacks testimony showing that Father and paternal grandparents had a "good relationship" with regular proximity throughout the dependency proceeding, as was the case in *Y.M.* Thus, we cannot presume that Father—who was incarcerated from February 2021 to at least the date he filed this appeal in May 2022—"easily could have asked" paternal grandparents about P.M.'s possible Native American ancestry. Nor can we presume that paternal grandparents, who do not appear to have sought placement of P.M., had a "strong incentive" to raise any Native American ancestry with the Agency and court. (*Cf. Y.M.*, *supra*, 82 Cal.App.5th at pp. 917–918 ["paternal grandfather presumably would have a strong incentive to raise any Indian ancestry in support of [his] goal (of

10

seeking Y.M.'s placement with him)"]; *S.S., supra*, 75 Cal.App.5th at p. 582 [maternal grandmother would have incentive to raise Native American ancestry in furtherance of her goal to adopt child].)  Regardless, paternal grandparents are not the only extended family members here with whom the Agency neglected to conduct ICWA inquiries.

The Agency further contends that paternal great-aunt had already been through the resource family approval process with a paternal aunt and presumably had a motive to raise any Native American ancestry because of her interest in adopting P.M.  Although this fact suggests paternal great-aunt was less likely to have information bearing meaningfully on P.M.'s possible Native American ancestry, it does not negate the likely meaningful information that numerous *other* relatives—on both P.M.'s paternal and maternal side—could have offered regarding this question.  Therefore, on this record, we must conclude that inquiry of these relatives was likely to shed meaningful light on P.M.'s status under ICWA and that the error was prejudicial.

## IV.

## DISPOSITION

The juvenile court's order issued at the section 366.26 hearing is conditionally reversed.  The matter is remanded to the juvenile court with directions to vacate its finding that ICWA does not apply and to instruct the Agency to complete its initial inquiry under ICWA.  If, after completing its

11

inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know that P.M. is an Indian child, the order issued at the section 366.26 hearing shall be reinstated.  If the Agency or the juvenile court has reason to believe that P.M. is an Indian child, the juvenile court shall proceed appropriately.

McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


HALLER, J.

12